**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LOLA RUSSELL, individually and on behalf of similarly situated individuals,<br><br>      Plaintiff,<br><br>v.<br><br>WHALECO INC. d/b/a TEMU, a Delaware corporation,<br><br>      Defendant. | Case No. 1:26-cv-04296<br><br>District Judge Sharon Johnson Coleman<br><br>Magistrate Judge Young B. Kim |

## <u>DEFENDANT'S MOTION TO COMPEL ARBITRATION</u>

Date: May 21, 2026

Gary Feinerman (Illinois Bar No. 6206906)
Alexis Lazarczyk (*pro hac vice* forthcoming)
LATHAM & WATKINS LLP
330 North Wabash Ave., Suite 2800
Chicago, Illinois 60611
Tel: (312) 876-7700
gary.feinerman@lw.com
alexis.lazarczyk@lw.com

Serrin Turner (*pro hac vice*)
Matthew Valenti (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
serrin.turner@lw.com
matthew.valenti@lw.com

**TABLE OF CONTENTS**

Preliminary Statement..................................................................................................................... 1

Factual Background ........................................................................................................................ 2

    A.    A User Must Agree to Temu's Terms to Make Purchases on the Temu App ........ 2

    B.    The Terms Contain a Broad Arbitration Provision................................................. 3

    C.    Plaintiff Ignored Her Agreement and Filed a Putative Class Action in Court........ 4

Legal Standard ............................................................................................................................... 5

Argument ....................................................................................................................................... 5

    A.    Plaintiff Validly Agreed to the Arbitration Agreement in Temu's Terms.............. 5

        1.    The Law Merely Requires Assent Following Reasonable Notice ............. 5

        2.    Temu's Registration Prompt Provides Reasonable Notice......................... 8

        3.    Multiple Courts Have Confirmed That Temu's Registration Prompt
             Provides Reasonable Notice ...................................................................... 11

        4.    Plaintiff Manifested Her Assent to the Registration Prompt .................... 12

    B.    Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement ............. 13

    C.    Plaintiff May Not Pursue Class Claims in Court or in Arbitration....................... 14

Conclusion .................................................................................................................................. 15

i

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Acaley v. Vimeo, Inc.*,
464 F. Supp. 3d 959 (N.D. Ill. 2020) ...................................................................8, 9

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011).................................................................................................5, 15

*Baginsky v. Zynga, Inc.*,
2026 WL 810330 (S.D.N.Y. Mar. 24, 2026) ...........................................................9

*Bahoor v. Varonis Sys., Inc.*,
152 F. Supp. 3d 1091 (N.D. Ill. 2015) ....................................................................14

*Domer v. Menard, Inc.*,
116 F.4th 686 (7th Cir. 2024) ....................................................................... *passim*

*Edmundson v. Amazon.com, Inc.*,
2020 WL 5819870 (N.D. Ill. Sept. 30, 2020) ........................................................5, 15

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023) ....................................................................................6, 11

*Feld v. Postmates, Inc.*,
442 F. Supp. 3d 825 (S.D.N.Y. 2020)......................................................................6, 8

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012).......................................................................7

*Gore v. Alltel Commc'ns, LLC*,
666 F.3d 1027 (7th Cir. 2012) .................................................................................6, 14

*Hamera v. Best Buy Co.*,
790 F. Supp. 3d 664 (N.D. Ill. 2025) ......................................................................8, 9

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)...................................................................................................15

*Hu v. Whaleco, Inc.*,
779 F. Supp. 3d 265 (E.D.N.Y. 2024) .....................................................................11, 12

*In re Whaleco Inc. Malware Litig.*,
2025 WL 3691444 (C.D. Cal. Aug. 29, 2025).........................................................13

*Johnson v. Uber Techs., Inc.*,
  2018 WL 4503938 (N.D. Ill. Sep. 20, 2018) ..................................................................7, 10

*Kemph v. Reddam*,
  2015 WL 1510797 (N.D. Ill. Mar. 27, 2015).......................................................................15

*Kohler v. Whaleco, Inc.*,
  757 F. Supp. 3d 1112 (S.D. Cal. 2024)................................................................................12

*Lee v. Ticketmaster LLC*,
  817 F. App'x 393 (9th Cir. 2020) ........................................................................................13

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017).......................................................................................6, 7, 11

*Miracle-Pond v. Shutterfly, Inc.*,
  2020 WL 2513099 (N.D. Ill. May 15, 2020) .........................................................................7

*Nayal v. HIP Network Servs. IPA, Inc.*,
  620 F. Supp. 2d 566 (S.D.N.Y. 2009)...................................................................................15

*O'Shea v. Maplebear*,
  508 F. Supp. 3d 279 (N.D. Ill. 2020) ...................................................................................15

*Russell v. Experian Info. Sols., Inc.*,
  2025 WL 1725168 (N.D. Ill. Jun. 20, 2025)...........................................................................7

*Saizhang Guan v. Uber Techs., Inc.*,
  236 F. Supp. 3d 711 (E.D.N.Y. 2017) ....................................................................................7

*Selden v. Airbnb, Inc.*,
  2016 WL 6476934 (D.D.C. Nov. 1, 2016), *aff'd*, 4 F.4th 148 (D.C. Cir. 2021) .......................9

*Selden v. Airbnb, Inc.*,
  4 F.4th 148 (D.C. Cir. 2021)...........................................................................................7, 11

*Silva v. WhaleCo, Inc.*,
  2024 WL 4487421 (N.D. Cal. Oct. 10, 2024)........................................................................13

*Sinavsky v. NBCUniversal Media, LLC*,
  2021 WL 4151013 (S.D.N.Y. Sept. 13, 2021)........................................................................15

*Tinder v. Pinkerton Sec.*,
  305 F.3d 728 (7th Cir. 2002) .................................................................................................5

*Vasell v. SeatGeek, Inc.*,
  2025 WL 240912 (E.D.N.Y. Jan. 17, 2025) ............................................................................9

iii

*Vranjkovic v. Eldorado Trading Grp., LLC*,
  2014 WL 6685960 (N.D. Ill. Nov. 24, 2014) ..........................................................................14

*Wallace v. Grubhub Holdings, Inc.*,
  970 F.3d 798 (7th Cir. 2020) ...............................................................................................5

*Wilcosky v. Amazon.com, Inc.*,
  517 F. Supp. 3d 751 (N.D. Ill. 2021) ...................................................................................9

*Zaltz v. JDATE*,
  952 F. Supp. 2d 439 (E.D.N.Y. 2013) ...................................................................................8

*Ziboukh v. Whaleco, Inc.*,
  795 F. Supp. 3d 349 (E.D.N.Y. 2025) ...............................................................................12

*Zurich Am. Ins. Co. v. Watts Indus., Inc.*,
  417 F.3d 682 (7th Cir. 2005) ...........................................................................................5, 14

**STATUTES**

9 U.S.C.
  § 1..........................................................................................................................................5
  § 4..........................................................................................................................................5

28 U.S.C. § 1404(a) ..................................................................................................................2

## PRELIMINARY STATEMENT

Plaintiff's claims belong in arbitration, not in court. Through her use of Temu's services, Plaintiff agreed to resolve any disputes with Temu through binding arbitration. Specifically, when Plaintiff registered her Temu account, she was presented with a prompt informing her that, by continuing, she would be agreeing to Temu's Terms of Use. Plaintiff was presented with a similar prompt each time she logged back into her account and each time she made a purchase on Temu. These prompts linked to the Terms and employed a format that federal appeals courts, including the Seventh Circuit in *Domer v. Menard, Inc.*, 116 F.4th 686 (7th Cir. 2024), have found to form a valid agreement. Indeed, courts in multiple districts have examined the very prompt at issue here and have held that users who proceed past it validly assent to Temu's Terms and are bound by the arbitration agreement therein.

The arbitration agreement in the Terms squarely encompasses Plaintiff's claims. It applies to any dispute "arising out of or relating in any way to" the use of Temu's services or products purchased through the services. That language readily applies to the claims here, which concern tariffs allegedly levied on products Plaintiff purchased through her use of Temu. Even if there were any doubt about the arbitration provision's scope, the Terms delegate resolution of arbitrability issues, with limited exceptions not applicable here, to the arbitrator.

Not only do the Terms require arbitration, they preclude Plaintiff from pursuing claims on behalf of a class. Plaintiff agreed to the class action waiver in the Terms, and she ignored this requirement when she filed this suit on behalf of a putative nationwide class of Temu users.

Accordingly, the Court should compel arbitration of Plaintiff's claims—on an individual, not class-wide, basis.[1]

---

[1] By filing this motion, Temu does not waive, and expressly reserves, any rights or defenses it may have aside from moving to compel arbitration, including the right to seek transfer of this action to another district

1

## FACTUAL BACKGROUND

### A.   A User Must Agree to Temu's Terms to Make Purchases on the Temu App

Temu is an e-commerce company that connects consumers with sellers, manufacturers, and brands around the world. Compl. (Dkt. 1-2) ¶ 21; Decl. of Michael Trinh ("Trinh Decl.") ¶ 3. Temu makes its services available to consumers through its website (https://www.temu.com) and mobile apps on Android and Apple iOS devices. Compl. ¶ 21; Trinh Decl. ¶ 3.

To make purchases on the Temu app, a user must first register a Temu account and accept the Terms. *See* Trinh Decl. ¶¶ 5, 6. During registration, the user is presented with the prompt shown here (the "Registration Prompt").  It contains (i) a field for the user to input their email or phone number, and a corresponding "Continue" button; and (ii) buttons allowing the user to "Continue" by instead registering via their existing Google, Facebook, Twitter/X or Apple account. *Id.* ¶¶ 6, 7. Immediately below is a notice stating: "By continuing, you agree to our **Terms of Use** and **Privacy & Cookie Policy**." *Id.* ¶ 7. The bolded words "Terms of Use" and "Privacy & Cookie Policy" hyperlink to the respective documents. *Id.* The entire Registration Prompt is displayed on one screen—so the user need not scroll down to see any part of it, including the link to the Terms. *Id.* ¶ 6; Ex. A. [2]



---

under 28 U.S.C. § 1404(a), should the Court deny this motion.

[2] Citations to "Ex." refer to the exhibits attached to the Declaration of Michael Trinh ("Trinh Decl."), and citations to "App." refer to the appendix at the end of this brief.

If at any point the user logs out of Temu after registering, they must agree to the Terms again each time they input their credentials to log back in—as they again are shown the Registration Prompt upon each login. Trinh Decl. ¶ 8. Further, each time a user makes a purchase, they are presented with a checkout screen that conspicuously informs them that, by submitting their order, they "agree to [Temu's] Terms of Use," including the mandatory arbitration provision therein. *Id.* ¶ 15; *see also* Ex. B (image of checkout screen).

**B.     The Terms Contain a Broad Arbitration Provision**

The Terms include an arbitration provision broadly requiring user disputes with Temu to be arbitrated. The Terms call attention to the arbitration agreement at the outset, stating in all bolded caps: "**SECTION 19 CONTAINS, AMONG OTHER THINGS, AN AGREEMENT TO ARBITRATE WHICH REQUIRES, WITH LIMITED EXCEPTIONS, THAT ALL DISPUTES BETWEEN YOU AND [TEMU] BE RESOLVED BY BINDING AND FINAL ARBITRATION.**" Ex. C § 1.5 (emphasis in original). Section 19, titled "Arbitration Agreement," in turn provides (subject to exceptions not applicable here) that "any dispute, claim, or disagreement arising out of or relating in any way to your access to or use of the Services … [or] any products sold or distributed through the Services … will be resolved by binding arbitration … rather than in court[.]" *Id.* § 19.1. Section 19 also contains a class action waiver, stating, again in all bolded caps, that claims may be brought "**ONLY ON AN INDIVIDUAL BASIS AND NOT ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS**[.]" *Id.* § 19.4 (emphasis in original).

The Arbitration Agreement has a delegation clause generally requiring that disputes regarding the arbitration provision be decided by an arbitrator in the first instance. Again subject to exceptions not applicable here, the delegation clause provides: "The arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or

3

related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement[.]" *Id.* § 19.7.[3]

### C.  Plaintiff Ignored Her Agreement and Filed a Putative Class Action in Court

Plaintiff is a Temu user, Compl. ¶¶ 34-35, and as such she agreed to the Terms. Specifically, Plaintiff registered a Temu account on January 2, 2023, via the Temu app. Trinh Decl. ¶ 13. During that process, Plaintiff was shown the Registration Prompt, notifying her that, by continuing, she would be consenting to the Terms. *Id.* Plaintiff proceeded to create her account by clicking the "Continue with Google" button on the Registration Prompt. *Id.* In addition, Plaintiff logged out and back into her Temu account 20 times after initially registering; and in doing so she was repeatedly shown, and chose to accept by continuing, the same notice that her continued use of Temu would constitute consent to the Terms. *Id.* ¶ 14. Finally, every time Plaintiff purchased products on Temu, which she claims she did multiple times during the putative class period, Compl. ¶¶ 34-35, she would have reaffirmed her agreement to the Terms during the checkout process, Trinh Decl. ¶¶ 15-17.

Even though Plaintiff agreed she would arbitrate any disputes with Temu and would not bring claims on a classwide basis, on March 13, 2026, Plaintiff filed this putative class action against Temu, asserting state-law claims related to tariffs imposed by the United States. Plaintiff brings these claims on behalf of herself and purportedly on behalf of a putative nationwide class of Temu users and a putative Illinois subclass. Compl. ¶ 51.

---

[3] The Terms also include a New York choice of law provision, providing that "these Terms and any dispute of any sort that might arise between you and us hereunder will be governed by the laws of the State of New York and applicable federal laws of the United States of America, consistent with the Federal Arbitration Act, without regard to any principle of conflict-of-laws." Ex. C § 18.3.

**LEGAL STANDARD**

Temu's Arbitration Agreement provides that the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), governs its interpretation and enforcement. Ex. C § 19.5. "[T]he FAA was designed to promote arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011), and it "sweeps broadly, requir[ing] courts rigorously to enforce arbitration agreements according to their terms[,]" *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 800 (7th Cir. 2020). Under Section 4 of the FAA, an arbitration agreement is enforceable if there is "[1] a written agreement to arbitrate, [2] a dispute within the scope of the arbitration agreement, and [3] a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005).

Motions to compel arbitration are reviewed under a summary judgment standard. *Edmundson v. Amazon.com, Inc.*, 2020 WL 5819870, at *1 (N.D. Ill. Sept. 30, 2020). If the moving party shows there is a written agreement to arbitrate, the opposing party "must identify a triable issue of fact" as to whether the parties validly entered into the agreement. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002).

**ARGUMENT**

**A.    Plaintiff Validly Agreed to the Arbitration Agreement in Temu's Terms**

Plaintiff had notice of the Terms and manifested her assent to be bound by them when she created her Temu account. Multiple federal courts have held that Temu's Registration Prompt suffices to create a valid and binding agreement to arbitrate, and they have compelled Temu users to arbitration accordingly. This Court should reach the same result here.

**1.    The Law Merely Requires Assent Following Reasonable Notice**

Determining whether an online agreement was formed turns on whether the user (i) had "reasonably conspicuous notice of the terms to which the consumer will be bound" and (ii) took "some action, such as clicking a button or checking a box, that unambiguously manifest[ed] his or

5

her assent to those terms." *Menard*, 116 F.4th at 695; *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (same standard). [4] This standard is applied through the lens of a "reasonable online shopper," meaning "a person who is neither an expert nor a novice with technology." *Menard*, 116 F.4th at 695; *see also Meyer*, 868 F.3d at 77 (similar). The standard "permits certain basic, objective assumptions regarding the user's familiarity with commercial websites, hyperlinks, and online contracts, regardless of subjective experience." *Menard*, 116 F.4th at 695; *see also Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 830 (S.D.N.Y. 2020) ("The Court … does not presume that the user has never before encountered an app or entered into a contract using a smartphone.").

Temu's Terms are presented in a common format, known as a "sign-in wrap" agreement, in which the user is presented with a hyperlink to the Terms at the time of account registration and is notified that, by creating an account, they are agreeing to the Terms. *See Selden v. Airbnb, Inc.*, 4 F.4th 148, 156 (D.C. Cir. 2021) (explaining that "sign-in wrap" consists of a user interface "designed so that a user is notified of the existence and applicability of the site's 'terms of use' when proceeding through the website's sign-in or login process"). Courts regularly uphold sign-in wrap agreements. *See, e.g.*, *Russell v. Experian Info. Sols., Inc.*, 2025 WL 1725168, at *4 (N.D. Ill. Jun. 20, 2025) (enforcing agreement where plaintiff "clicked the 'Create Your Account' button and accepted those terms"); *Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 723-24

---

[4] "To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). Although the Terms are governed by New York law (Ex. C § 18.3), the Court may consult cases applying the law of Illinois and other jurisdictions. *See Edmundson v. Klarna, Inc.*, 85 F.4th 695, 702-03 (2d Cir. 2023) ("[T]raditional contract formation law does not vary meaningfully from state to state, … and therefore, our precedents determining the enforceability of arbitration provisions according to the contract-law principles of other states may also be relevant to this dispute."). This comports with the Seventh Circuit's approach in similar cases. *See, e.g.*, *Menard*, 116 F.4th at 694 (applying Wisconsin contract law, but noting that the "general rules of contract formation" apply "so the choice of law is not likely to affect the outcome").

(E.D.N.Y. 2017) ("[C]ourts in this Circuit have upheld 'Sign-in Wrap' agreements where plaintiffs did not even click an 'I Accept' button, but instead clicked a 'Sign Up' or 'Sign In' button where nearby language informed them that clicking the buttons would constitute accepting the terms of service."); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839-41 (S.D.N.Y. 2012) (collecting similar cases).

Courts determine the validity of sign-in wrap agreements by "look[ing] to the layout and language of the site to decide whether it would provide a reasonably prudent smartphone user with reasonable notice that a click—i.e., signing up—will manifest assent to an agreement." *Airbnb*, 4 F.4th at 156; *see also Meyer*, 868 F.3d at 75 (same); *Miracle-Pond v. Shutterfly, Inc.*, 2020 WL 2513099, at *4 (N.D. Ill. May 15, 2020) (objective test governs whether a user has adequate notice). A user has sufficient notice when a link to the terms is presented conspicuously and placed near the "register" or "continue" button—for example, where the link appears on the same screen, so that the user need not scroll down to find it. *See Johnson v. Uber Techs., Inc.*, 2018 WL 4503938, at *4 (N.D. Ill. Sep. 20, 2018) (enforcing agreement where "the app that Johnson used to create his Uber account [stated]: 'By creating an Uber account, you agree to the Terms of Service & Privacy Policy,'" which "appeared in an easy-to-read font on an uncluttered screen, and no scrolling was required to view it"); *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 453 (E.D.N.Y. 2013) (enforcing agreement where "Terms and Conditions of Service appear on the same screen as the button a prospective user must click in order to move forward in the registration process"); *Postmates*, 442 F. Supp. 3d at 831-32 (same).

As these cases make clear, there are no rigid requirements as to exactly what form the notification must take. *Menard* instructs courts to examine "(1) the simplicity of the screen; (2) the clarity of the disclosure; (3) the size and coloring of the disclosure's font; (4) the spatial placement

7

of the hyperlink; and (5) the temporal relationship to the user's action." 116 F.4th at 695. While some courts focus on the spatial placement of the hyperlink or whether it is underlined, in a specific color, or of a certain font size, the weight of authority holds that "[n]o single factor is dispositive: the question is whether the website provided reasonable notice in light of the whole webpage." *Id.*; *see, e.g.*, *Hamera v. Best Buy Co.*, 790 F. Supp. 3d 664, 675-76 (N.D. Ill. 2025) (enforcing agreement where "the disclosure and hyperlink text is smaller than the surrounding text," but "the disclosure and link are directly 'next' to the order button"); *Acaley v. Vimeo, Inc.*, 464 F. Supp. 3d 959, 963, 965-68 (N.D. Ill. 2020) (enforcing agreement where link was in "smaller-font text" but "appeared in bold type"); *Postmates*, 442 F. Supp. 3d at 831 ("That the notice and hyperlinks are in a smaller font size does not render the disclaimer inconspicuous; the grey and black color contrast against the white background and are clear to the reasonably prudent user creating an account. The hyperlinks to the TOS and Privacy Policy are in a darker, bolder font than the rest of the text, signifying to a reasonably prudent user that these would be clickable terms."). Particularly given that "[a]ny reasonably-active adult consumer will almost certainly appreciate that by signing up for a particular service, he or she is accepting the terms and conditions of the provider[,]" there are no specific stylings or formats that must be used, so long as the agreement is presented to users in a reasonably conspicuous fashion. *Selden v. Airbnb, Inc.*, 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016), *aff'd*, 4 F.4th 148 (D.C. Cir. 2021).

### 2. Temu's Registration Prompt Provides Reasonable Notice

The Registration Prompt shown during Temu's registration process readily satisfies the reasonable notice standard. It presents the Terms to users through a hyperlink, appearing in bold font, in a manner immediately visible on a single, uncluttered screen. Trinh Decl. ¶¶ 5-7; Ex. A. Courts regularly hold that this type of format provides reasonable notice of the linked terms, and that users validly manifest their assent when they choose to continue. *See, e.g.*, *Baginsky v. Zynga,*

8

*Inc.*, 2026 WL 810330, at *4 (S.D.N.Y. Mar. 24, 2026) (finding valid agreement where hyperlink to terms was presented at top of screen in light purple font against dark purple background, "simultaneously to enrollment" and "every time a user signs in to the app") (*compare* Ex. A *with* App. at 5, which reproduces *Zynga* registration screen); *Vasell v. SeatGeek, Inc.*, 2025 WL 240912, at *6 (E.D.N.Y. Jan. 17, 2025) (finding valid agreement where "the account sign-up page displayed distinct grey text, an uncluttered layout, and underlined hyperlinks to the TOU"); *Best Buy*, 790 F. Supp. 3d at 667, 674-77 (finding valid agreement where plaintiff "click[ed] a 'Place Your Order' button" that "had blue text directly above it with a hyperlink to the 'BestBuy.com Terms and Conditions'"); *Wilcosky v. Amazon.com, Inc.*, 517 F. Supp. 3d 751, 764 (N.D. Ill. 2021) (finding valid agreement where "Amazon.com's standard check-out page contains a notice that states, 'By placing your order, you agree to Amazon.com's privacy notice and conditions of use,'" even though text was "somewhat smaller than other text on the page"); *Vimeo*, 464 F. Supp. 3d at 966 (finding valid agreement where screen indicated that plaintiff could "'Create account' and, directly below that, in smaller but still conspicuous font, displayed a statement that read: 'By starting you agree to our terms and privacy policy,' with hyperlinks to the respective documents").

The Seventh Circuit's *Menard* decision—concerning an online checkout screen—is instructive. The language *Menard* considered to be reasonably conspicuous appeared at the bottom of the screen and stated "**Please note:** … By submitting your order, you accept our Terms of Order." *Menard*, 116 F.4th at 692. A hyperlink to the Terms of Order appeared directly below that disclosure, in green font that was neither bolded nor underlined. *Id.* The Seventh Circuit considered the page to be "streamlined, well-spaced, and internally consistent," and found that the notice was "likely to catch a user's attention," as the disclosure "explicitly t[old] the user" that submitting an order constituted assent to the Terms of Order. *Id.* at 696-97.

9

The disclosure language on Temu's Registration Prompt—"By continuing, you agree to our **Terms of Use**"—is at least as clear as the disclosure at issue in *Menard*. *Compare* Ex. A, *with* App. at 4 (applicable checkout screen reproduced from *Menard*). Temu's Registration Prompt hyperlink is bolded, which the link in *Menard* was not, and both the disclosure and the hyperlink in the Registration Prompt are spatially closer to the action button than was the case in *Menard*. The overall presentation is similar to, if not less cluttered than, the text and presentation deemed sufficient in *Menard*.

The Second Circuit's decision in *Meyer* is also instructive, as the Seventh Circuit has noted. *Menard*, 116 F.4th at 695 (citing *Meyer*); *see also Johnson*, 2018 WL 4503938, at *5 ("The Court finds the reasoning in [*Meyer*] persuasive."). *Meyer* held that a registration screen substantially similar to Temu's provided reasonable notice of Uber's terms of use. *Compare* Ex. A, *with* App. at 1 (applicable registration screen reproduced from *Meyer*). The court explained that the Uber registration screen—just like Temu's—was "uncluttered, with only fields for the user to enter his or her [registration] details, buttons to register for a user account or to connect the user's pre-existing PayPal account or Google Wallet[,]" and a notice stating that "[b]y creating an Uber account, you agree to [Uber's terms of use]," which "appears directly below the buttons for registration." *Meyer*, 868 F.3d at 78. Further, like Temu's Registration Prompt, "[t]he entire screen [in the Uber application] is visible at once, and the user does not need to scroll beyond what is immediately visible to find notice of the Terms of Service." *Id*. Accordingly, "a reasonably prudent smartphone user would understand that the terms were connected to the creation of a user account." *Id*. Temu's Registration Prompt is substantially the same—if anything, it is less cluttered—so the reasoning in *Meyer* applies with full force here. [5]

---

[5] The Second Circuit reached a similar holding in *Klarna*, again finding that a registration screen substantially similar to Temu's provided reasonable notice to users. 85 F.4th at 705-07; *compare* Ex. A,

### 3. Multiple Courts Have Confirmed That Temu's Registration Prompt Provides Reasonable Notice

Consistent with the authorities cited above, multiple courts have evaluated Temu's Registration Prompt and concluded it provides users with reasonably conspicuous notice of the Terms.

In *Hu v. Whaleco, Inc.*, 779 F. Supp. 3d 265 (E.D.N.Y. 2024), the court there evaluated the same Registration Prompt at issue here. *Id.* at 274 (showing Registration Prompt). The court meticulously analyzed the Registration Prompt's pertinent features—applying the same legal standard described above—and concluded: (i) "[the Registration Prompt] appears 'uncluttered' because it presents users with a single field to enter details, two links—one to the Terms and one to a privacy policy—and five buttons to select either to register for a new account or to connect to four types of pre-existing accounts," *id.* at 289 (comparing to screens in *Klarna* and *Meyer*); (ii) "[t]he notice and hyperlink are reasonably conspicuous and visible at once," including because "[t]he hyperlink directing a user to the Terms is bolded and in a dark gray font, which contrasts against the light gray font of the remainder of the notice and the white background of the Registration Screen," *id.* at 289-90 (citing cases); and (iii) "[t]he notice and hyperlinks are spatially and temporally coupled with the user's initial transaction with the Temu App—creating an account," including because "[t]he text of the notice, with hyperlinks to the Terms and privacy

---

*with* App. at 2 (applicable screen reproduced from *Klarna*). The court rejected the plaintiff's arguments about the hyperlink's font size and color, explaining that "[a]lthough [they] are in a smaller font relative to other text … , they are set apart from surrounding information by being underlined and in a color that stands in sharp contrast to the color of the interfaces[] [*i.e.*, dark text on white background]." *Id.* at 706 ("[B]ecause the interface does not include a plethora of clutter or extraneous information, the notice to Klarna's terms— even if in a smaller font—appears sufficiently conspicuous[.]"). Similarly, in *Selden v. Airbnb*, the D.C. Circuit held Airbnb's registration screen sufficient where: (i) "[t]he three buttons [for Facebook, Google, and email registration] plainly provided options for how a user could sign up for Airbnb"; (ii) "[d]irectly below these three options, Airbnb informed the user that 'By signing up, I agree to Airbnb's Terms of Service'"; and (iii) "[t]he buttons appeared in close proximity to the notice and on a single screen." 4 F.4th at 157; *see* App. at 3 (applicable Airbnb registration screen reproduced from *Airbnb*).

policy, appears directly below the five options to create an account and is provided simultaneously with registration," *id.* at 291 (citing cases). Accordingly, the court found an agreement and compelled arbitration, reasoning: "Because the Registration Screen appears uncluttered, is visible at once, and the notice and bolded hyperlinks are reasonably conspicuous and spatially and temporally coupled with a user's creation of an account, the Court finds that the Registration Screen provided Plaintiffs 'reasonably conspicuous notice' of the Terms 'in light of the whole [interface].'" *Id.* at 292 (citing *Klarna*).[6]

Other district courts have likewise held that users who registered accounts with Temu validly agreed to the Terms. One California district court compelled arbitration after finding that a "comparison of Temu's notice with the notices [that sufficed under Ninth Circuit authority] reveals that Temu's notice clearly passes the test." *Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112, 1124 (S.D. Cal. 2024). A second California district court reached a similar conclusion. *Silva v. WhaleCo, Inc.*, 2024 WL 4487421, at *4 (N.D. Cal. Oct. 10, 2024). And a third California district court held the same, specifically noting that "courts examining identical or nearly identical Temu sign-in agreements … have determined that the Terms of Use hyperlink sufficiently notified" users of the Terms. *In re Whaleco Inc. Malware Litig.*, 2025 WL 3691444, at *4 (C.D. Cal. Aug. 29, 2025).

### 4.      Plaintiff Manifested Her Assent to the Registration Prompt

Consistent with the foregoing authorities, the Registration Prompt provides reasonably conspicuous notice of Temu's Terms, and therefore all users who continue past the Registration Prompt manifest their assent to be bound to the Terms. The evidence is clear that Plaintiff did so

---

[6] The same court again addressed challenges to the Registration Prompt in *Ziboukh v. Whaleco, Inc.*, 795 F. Supp. 3d 349 (E.D.N.Y. 2025). The court likewise held there that the "[p]laintiffs [had] unambiguously manifested assent to the Terms" because the Registration Screen was a "clear prompt directing users to read the [Terms]" and signaled "that their acceptance of the benefit of registration would be subject to contractual terms." *Id.* at 391.

here. *See* Trinh Decl. ¶¶ 13-17.

Had Plaintiff merely been shown, and continued past, the Registration Prompt once, that would have been enough under the foregoing case law. But Plaintiff did so repeatedly—including the 20 times she logged back into her account, when she would have been shown the Registration Prompt again before continuing. *Id.* ¶ 14. Moreover, Plaintiff would also have been presented with Temu's checkout screen when she made the purchases she alleges. *Id.* ¶¶ 15-17. That checkout screen likewise provided reasonable notice of the Terms—indeed, the link it contains is much more conspicuous than the one deemed sufficient in *Menard*. *Compare* App. at 4 (Menard checkout screen), *with* Ex. B (Temu checkout screen). Accordingly, Plaintiff's assent to the Terms was validly obtained by Temu multiple times over. *See Lee v. Ticketmaster LLC*, 817 F. App'x 393, 394 (9th Cir. 2020) (finding that plaintiff "validly assented to Ticketmaster's Terms of Use, including the arbitration provision, [because] each time he clicked the 'Sign In' button … three lines below the button, the website displayed the phrase, 'By continuing past this page, you agree to our Terms of Use' …").

### B.  Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement

Courts enforce valid arbitration agreements where the dispute at issue comes within its scope. *See Menard*, 116 F.4th at 700; *Zurich*, 417 F.3d at 687, 690-91. The scope of Temu's arbitration agreement is broad, encompassing "any dispute … arising out of or relating to" Plaintiff's use of Temu. Ex. C § 19.1. This sort of language constitutes "an 'expansive' clause." *Menard*, 116 F.4th at 701. "The Seventh Circuit has held that an arbitration clause stating that it applies to 'all disputes arising out of the Agreement … reaches all disputes having their origin or genesis in the contract[.]" *Vranjkovic v. Eldorado Trading Grp., LLC*, 2014 WL 6685960, at *1 (N.D. Ill. Nov. 24, 2014); *see also Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1099 (N.D. Ill. 2015) (applying same principle under New York law).

13

Here, there is no basis to dispute that Plaintiff's claims are encompassed by the arbitration agreement. The arbitration provision expressly applies to "any dispute, claim, or disagreement arising out of or relating in any way to your access to or use of the Services … [or] any products sold or distributed through the Services[.]" Ex. C § 19.1. The dispute here clearly arises out of Plaintiff's use of the services, and more specifically to products sold to Plaintiff through the services. Plaintiff alleges that she purchased products from Temu's app, Compl. ¶¶ 34-35, and that Temu wrongfully passed tariffs on the product onto Plaintiff. *Id.* ¶¶ 7, 10, 80. Thus, Plaintiff's claims unquestionably "aris[e] out of" or "relat[e] in [some] way to" her use of Temu's services and the sale of products to her through those services. Those claims thus must be arbitrated. *See Gore*, 666 F.3d at 1036 (applying "broad reading of 'arising out of and relating to,'" and finding claims "fall within the scope of the arbitration clause").

Even were there any dispute as to whether Plaintiff's claims fall within the arbitration provision's scope, such a dispute must be resolved in arbitration. The Terms provide, subject to exceptions inapplicable here, that the arbitrator shall have "exclusive authority" to determine the arbitration provision's enforceability and scope. Ex. C § 19.7. In such circumstances, courts require that disputes about the scope or application of the arbitration agreement be delegated to the arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."); *Kemph v. Reddam*, 2015 WL 1510797, at *4 (N.D. Ill. Mar. 27, 2015) (finding that "[c]ourts in this district and elsewhere have found that similar language clearly evidences the parties' agreement to delegate gateway issues to the arbitrator"); *Sinavsky v. NBCUniversal Media, LLC*, 2021 WL 4151013, at *5 (S.D.N.Y. Sept. 13, 2021) (same).

### C. Plaintiff May Not Pursue Class Claims in Court or in Arbitration

Just as Plaintiff's agreement to the Terms requires her to arbitrate her claims, so too does

14

the class action waiver in the Terms preclude her from pursuing claims on behalf of a class as she seeks to do here. That waiver specifically provides that a user agreeing to the Terms may bring claims "only on an individual basis and not on a class, representative, or collective basis." Such class action waivers are fully enforceable. *See Concepcion*, 563 U.S. at 352 (such waivers enforceable under FAA); *O'Shea v. Maplebear*, 508 F. Supp. 3d 279, 289 (N.D. Ill. 2020) (same); *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009) ("Courts applying New York law … have uniformly held that class action waivers are not unconscionable."). Plaintiff thus cannot bring class claims—in this Court or in arbitration. *Amazon.com*, 2020 WL 5819870, at *2-3 (enforcing class waiver in arbitration context).

## CONCLUSION

For the foregoing reasons, the Court should compel Plaintiff to arbitrate her claims on an individual basis and stay the case pending the resolution of Plaintiff's claims in arbitration.

Dated: May 21, 2026

Respectfully submitted,

*/s/ Gary Feinerman*
Gary Feinerman, One of the Attorneys for Defendant
Whaleco Inc. dba Temu

Gary Feinerman (Illinois Bar No. 6206906)
Alexis Lazarczyk (*pro hac vice* forthcoming)
LATHAM & WATKINS LLP
330 North Wabash Ave., Suite 2800
Chicago, Illinois 60611
Tel: (312) 876-7700
gary.feinerman@lw.com
alexis.lazarczyk@lw.com

Serrin Turner (*pro hac vice*)
Matthew Valenti (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
serrin.turner@lw.com
matthew.valenti@lw.com

16

**APPENDIX**

**Exemplar Sign-in Wrap Registration and Checkout Screens Upheld by Courts**
(Page 1 of 5)

| |
|---|
| **Uber Registration Screen** |
| *Meyer v. Uber Techs., Inc.*, **868 F.3d 66 (2d Cir. 2017)** |

**APPENDIX**
(Page 2 of 5)

| Klarna Registration Screen |
| :---: |
| *Edmundson v. Klarna, Inc.*, 85 F.4th 695 (2d Cir. 2023) |



18

**<u>APPENDIX</u>**
(Page 3 of 5)

| **Airbnb Registration Screen** |
| :---: |
| ***Selden v. Airbnb, Inc.*, 4 F.4th 148 (D.C. Cir. 2021)** |
|  |

19

**APPENDIX**
(Page 4 of 5)

| Menard Checkout Screen |
|---|
| *Domer v. Menard, Inc.*, 116 F.4th 686 (7th Cir. 2024)[7] |



---

[7] The screenshot shown below is from Menard's submission to the District Court, as reflected in the PACER reference at the top of the image. This screenshot has better resolution than, but is otherwise identical to, the image appearing in the Seventh Circuit's opinion. *See Menard*, 116 F.4th at 692.

20

**APPENDIX**
(Page 5 of 5)

| Zynga Account Registration Screen |
| :---: |
| *Baginsky v. Zynga, Inc.*, 2026 WL 810330 (S.D.N.Y. Mar. 24, 2026)[8] |



---

[8] The image of the relevant account registration screen is taken from defendant-Zynga's motion to compel arbitration. *See Zynga,* No. 25-cv-01992-ALC (S.D.N.Y. June 23, 2025), ECF No. 23 at 5.

21