**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| LOLA RUSSELL, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| *Plaintiff,* | ) ) | Case No. 1:26-cv-04296 |
| v. | ) ) | |
| | ) | Hon. Sharon Johnson Coleman |
| WHALECO INC., d/b/a TEMU, a Delaware corporation. | ) ) ) | |
| *Defendant.* | ) ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANT WHALECO, INC.'S MOTION TO COMPEL ARBITRATION**

Dated: June 22, 2026

Myles McGuire
Evan M. Meyers
Joseph Dunklin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
jdunklin@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*

## TABLE OF CONTENTS

**Table of Authorities** ....................................................................................................... ii

I.      **INTRODUCTION** ................................................................................................1

II.     **BACKGROUND** ..................................................................................................3

III.    **LEGAL STANDARD** ..........................................................................................5

IV.    **ARGUMENT** .......................................................................................................6

       A.     **Whaleco Has Not Carried Its Burden to Prove an Agreement to Arbitrate** ....7

       B.     **The Temu Registration Prompt Did Not Provide Reasonably Conspicuous Notice.** ................................................................................................8

       C.     ***Domer* and *Hamera* Do Not Save Whaleco's Motion** .......................................12

       D.     **Later Logins and Checkout Screens Do Not Cure Whaleco's Failure of Proof** ................................................................................................14

       E.     **Delegation, Scope, and Class Waiver Cannot Be Reached Without Formation.** ................................................................................................15

V.      **CONCLUSION** ....................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

*A.D. v. Credit One Bank, N.A.*,
   885 F.3d 1054 (7th Cir. 2018) ........................................................................................ 7

*AT&T Technologies, Inc. v. Communications Workers of America*,
   475 U.S. 643 (1986) ......................................................................................................... 6

*Campos v. Tubi, Inc.*,
   716 F. Supp. 3d 623 (N.D. Ill. 2024) ............................................................................ 12

*Domer v. Menard, Inc.*,
   116 F.4th 686 (7th Cir. 2024) .............................................................................. 6, 10, 13

*Eakins v. Whaleco Inc.*,
   721 F. Supp. 3d 1252 (W.D. Okla. 2024) ................................................................. 11, 14

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995) ......................................................................................................... 6

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
   561 U.S. 287 (2010) ....................................................................................................... 15

*Hamera v. Best Buy Co.*,
   790 F. Supp. 3d 664 (N.D. Ill. 2025) ............................................................................ 13

*Hu v. Whaleco, Inc.*,
   779 F. Supp. 3d 265 (E.D.N.Y. 2024) ........................................................................... 13

*In re Whaleco Inc. Malware Litig.*,
   No. 2:25-cv-04651-MRA, 2025 WL 3691444 (C.D. Cal. Aug. 29, 2025)...................... 14

*Janiga v. Questar Cap. Corp.*,
   615 F.3d 735 (7th Cir. 2010) ......................................................................................... 15

*Johnson v. Human Power of N Co.*,
   767 F. Supp. 3d 845 (N.D. Ill. 2025) ............................................................................ 12

*Johnson v. Whaleco*,
   No. 5:23-cv-403-GAP-PRL (M.D. Fla. Oct. 13, 2023) .................................................. 11

*Kohler v. Whaleco, Inc.*,
    757 F. Supp. 3d 1112 (S.D. Cal. 2024)..................................................................................... 13

*Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*,
    272 Fed. Appx. 782 (11th Cir. 2008)........................................................................................ 6

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*,
    473 U.S. 614 (1985)................................................................................................................. 6

*Mohammed v. Uber Techs., Inc.*,
    No. 16-cv-2537, 2018 WL 1184733 (N.D. Ill. Mar. 7, 2018) ................................................... 6

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010)................................................................................................................... 6

*Sgouros v. TransUnion Corp.*,
    817 F.3d 1029 (7th Cir. 2016) .................................................................................... 2, 7, 9, 14

*Silva v. Whaleco, Inc.*,
    No. 24-cv-02890-SK, 2024 WL 4487421 (N.D. Cal. Oct. 10, 2024)...................................... 14

*Smith v. Whaleco Inc.*,
    741 F. Supp. 3d 1104, 1109 (W.D. Okla. 2024) ..................................................................... 11

## I.     INTRODUCTION

Arbitration is a matter of consent, not coercion. A defendant cannot force a plaintiff out of court and into arbitration unless it first proves that the plaintiff actually agreed – knowingly – to arbitrate. That threshold burden rests on the party seeking arbitration, and it must be carried with evidence—not assumption. Defendant Whaleco Inc. d/b/a Temu ("Whaleco" or "Temu") has not met its burden here, and its Motion to Compel Arbitration should be denied.

Temu is an online retailer of low-cost consumer goods manufactured primarily in China and elsewhere overseas. Plaintiff brings this action on behalf of consumers who paid Temu inflated prices and tariff-related charges tied to duties imposed under the International Emergency Economic Powers Act, only to see Temu retain those charges – and refuse to issue refunds – after the tariffs were held unlawful. Rather than address those claims on the merits, Whaleco asks the Court to send this dispute to individual arbitration based on Terms of Use it contends Plaintiff accepted. But Whaleco's Motion never establishes the one fact on which everything else depends: that Plaintiff validly agreed to the Terms of Use containing the arbitration provision Whaleco seeks to enforce.

Whaleco's formation evidence consists of a declaration from a customer-service manager and a set of generic "exemplar" screenshots describing how Temu's registration and checkout screens "generally appeared." But it presents no evidence of what *this* Plaintiff actually saw. Whaleco does not submit Plaintiff's account-creation record, her login history, her transaction-specific checkout data, or the historical Terms in effect when she allegedly registered or made her purchases. It does not identify her device, operating system, app version, screen variant, or language setting, all of which would have altered what appeared on her screen. On this record,

1

which is without the benefit of any discovery, Whaleco proves at most that Plaintiff clicked "Continue with Google" when she created an account and later made purchases. It does not prove that any screen gave her reasonably conspicuous notice that those acts would somehow eliminate her right to courtroom justice and instead bind her to individual arbitration, as described in the final seven pages of a sprawling thirty-one-page hyperlinked Terms and Conditions document. That failure is fatal for three independent reasons.

*First*, Whaleco has not met its burden of proving an agreement to arbitrate. Contract formation is governed by ordinary state-law principles of mutual assent, and assent turns on the objective content of the screen—not a company's after-the-fact characterization of a click. Whaleco's reliance on a "generally appeared" exemplar, divorced from the operative Terms and from any record of what Plaintiff herself encountered, cannot prove the formation of the contract it asks the Court to enforce.

*Second*, even taking Whaleco's exemplar at face value, the "Continue with Google" registration prompt did not provide reasonably conspicuous notice that proceeding would surrender Plaintiff's right to litigate. As the Seventh Circuit held in *Sgouros v. TransUnion Corp.*, a court "cannot presume that a person who clicks on a box that appears on a computer screen has notice of all contents not only of that page but of other content that requires further action." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034-35 (7th Cir. 2016). A button that signals third-party authentication coupled with inconspicuous "agreement to terms" language is not a manifestation of contractual assent. As set forth below, courts examining *this very Temu screen* have repeatedly denied arbitration on exactly these grounds, and Northern District of Illinois authority forecloses enforcement for the same reasons.

*Third*, Whaleco's fallback theories also fail. Plaintiff's later logins after her initial visit to Temu, cannot cure a defective notice, because repetition of an inadequate notice does not create assent. Whaleco's checkout theory rests on the same generic exemplars, untethered to Plaintiff's actual purchases. And Whaleco cannot reach delegation, scope, or class waiver – or invoke the FAA's policy favoring arbitration – without first proving the agreement those arguments presuppose. The FAA places arbitration agreements on equal footing with other contracts; it does not relieve Whaleco of proving that a contract exists.

Because Whaleco has not proven that Plaintiff agreed to arbitrate, its Motion should be denied.

## II.     BACKGROUND

Plaintiff brings this action on behalf of herself and similarly situated consumers who purchased products from Whaleco d/b/a Temu during the class period. Compl. ¶¶ 1, 27, 34-35. Plaintiff alleges that Whaleco charged consumers inflated prices and import charges tied to tariffs imposed under the International Emergency Economic Powers Act ("IEEPA"), later retained the benefit of those charges after the tariffs were determined to be unlawful, and failed to refund consumers the amounts they paid. Compl. ¶¶ 2, 7-15, 28-35. Plaintiff asserts claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, common law unjust enrichment, and common law money had and received. Compl. ¶¶ 57-92.

Whaleco has moved to compel arbitration based on Terms of Use that it contends Plaintiff accepted through Temu's app and website. Whaleco identifies three alleged assent events. First, Whaleco asserts that Plaintiff created a Temu account on January 2, 2023 through the Temu app by clicking "Continue with Google" on Temu's registration prompt. MTCA at 4; Trinh Decl. ¶ 13. Second, Whaleco asserts that Plaintiff later logged into her Temu account 20 times and, each time, was again shown the same registration prompt before proceeding. MTCA at 4; Trinh Decl. ¶ 14.

3

Third, Whaleco asserts that during the class period, users making purchases were presented with a checkout screen stating that, "[b]y submitting order," the user agreed to Temu's Terms of Use and Privacy Policy. MTCA at 4; Trinh Decl. ¶¶ 15-17.

Whaleco's formation evidence consists principally of the declaration of Michael Trinh, a Temu Customer Service Manager, and exemplar screenshots of Temu's registration and checkout screens. MTCA at 2. The Trinh declaration states that, as of January 2, 2023, the registration prompt "generally appeared" as shown in Defendant's Exhibit A. Trinh Decl. ¶ 6. According to Defendant, the registration prompt included an email or phone field, a "Continue" button, and buttons allowing the user to continue through Google, Facebook, Twitter/X, or Apple, followed by a notice stating: "By continuing, you agree to our Terms of Use and Privacy & Cookie Policy." Trinh Decl. ¶ 7. Whaleco argues that because Plaintiff allegedly clicked "Continue with Google," Plaintiff thereby accepted Temu's Terms. Trinh Decl. ¶ 13.

Whaleco does not submit the underlying account record showing *Plaintiff's* registration flow before or after the registration screen. Nor does it identify Plaintiff's device, operating system, app version, screen variant, language settings, or other interface variations applicable to the screen Plaintiff allegedly saw on January 2, 2023, each of which would affect the appearance of the notice allegedly presented to Plaintiff. Whaleco also does not attach records showing the dates, devices, screen versions, or underlying data for any of the 20 alleged later logins.

Whaleco's checkout evidence is similarly general. The Trinh declaration states that during the class period, Temu's checkout screen informed users that "[b]y submitting order," they agreed to Temu's Terms of Use and Privacy Policy, and he provides an exemplar image "as it would have appeared as of February 1, 2025." Trinh Decl. ¶ 15. But Whaleco does not identify the dates of Plaintiff's purchases, whether each purchase occurred through the app or website, what device or

4

app version Plaintiff used, what checkout flow applied, what screen version appeared, or which Terms were linked during each transaction. These omissions require the Court to take at face value (without any discovery) that Whaleco's unilaterally-presented exemplar illustrations accurately depict the actual notice presented to Plaintiff, a critical inquiry for an issue that can turn on attributes like font size and coloring.

Whaleco also relies on the *current* version of Temu's Terms, which were posted on November 7, 2025. Trinh Decl. ¶ 19. Those Terms contain the arbitration provision, delegation clause, and class-action waiver Whaleco seeks to enforce. Trinh Decl. ¶¶ 18-19; Ex. C § 19. But Plaintiff allegedly registered in January 2023, and the class period begins February 1, 2025. Compl. ¶ 27; Trinh Decl. ¶ 13. Whaleco does not attach the Terms in effect when Plaintiff allegedly registered, the Terms in effect during each class-period purchase, or the historical versions of the arbitration, delegation, class-waiver, and amendment provisions. Instead, Trinh states generally that all versions of Temu's Terms since launch "likewise contained an arbitration provision with the terms described in the Motion." Trinh Decl. ¶ 19. Given that Whaleco could likely produce the precise screen (and precise Terms) that any person saw on any given day, it is unacceptable – and more than a bit telling – that Whaleco chose only to produce the Terms posted many months later.

Based on that record, Whaleco asks the Court to compel Plaintiff to arbitrate her claims on an individual basis. Plaintiff opposes the Motion because Whaleco has not met its threshold burden of proving that Plaintiff assented to the Terms containing the arbitration provision.

III.    **LEGAL STANDARD**

Whether an arbitration agreement is valid and should be applied is "a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648

(1986); *see also Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626 (1985). Courts should generally "apply ordinary state-law principles that govern the formation of contracts" (*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)) to determine whether the parties agreed to arbitration as the Federal Arbitration Act "places arbitration agreements on equal footing with other contracts[.]" *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). As the party seeking to compel arbitration, Defendant "bear[s] the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence[.]" *Mohammed v. Uber Techs., Inc.*, No. 16-cv-2537, 2018 WL 1184733, at *5 (N.D. Ill. Mar. 7, 2018). Thus, "a district court considering . . . an agreement to arbitrate should give to the party denying the agreement the benefit of all reasonable doubts and inferences that may arise." *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 Fed. Appx. 782, 785–86 (11th Cir. 2008).

## IV.   ARGUMENT

Whaleco's Motion should be denied because it has not proven the threshold fact on which it depends: that Plaintiff agreed to arbitrate. While the Federal Arbitration Act reflects a policy favoring enforcement of arbitration agreements, "arbitration is a creature of contract," and "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Sgouros*, 817 F.3d at 1033. Before reaching delegation, scope, or class waiver, the Court must determine whether an agreement to arbitrate exists, and the party seeking to enforce an arbitration agreement bears the burden of proving that such an agreement exists. *Id.*; *see also Domer v. Menard, Inc.*, 116 F.4th 686, 694 (7th Cir. 2024). Whaleco has not carried that burden. Whaleco's evidence proves, at most, that Plaintiff allegedly clicked "Continue with Google" during her account creation and later made purchases on Temu. It does not prove that the relevant screen gave reasonably conspicuous notice that those acts would bind Plaintiff to arbitration.

**A.      Whaleco Has Not Carried Its Burden to Prove an Agreement to Arbitrate.**

The party seeking to compel arbitration must prove the existence of an enforceable arbitration agreement. *Domer*, 116 F.4th at 694; *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018). That issue is governed by ordinary state-law principles of contract formation. *Sgouros*, 817 F.3d at 1034. Under Illinois law, formation requires mutual assent, and the inquiry turns on objective manifestations of agreement—not a company's after-the-fact characterization of a user's conduct. *See id. Sgouros* itself illustrates the point: in that case the Seventh Circuit refused to enforce arbitration even though the plaintiff clicked a button labeled "I Accept & Continue to Step 3," because the surrounding screen did not reasonably notify the consumer that the click manifested assent to contractual terms. 817 F.3d at 1035. As the Seventh Circuit explained, online assent is "a fact-intensive inquiry," and courts "cannot presume that a person who clicks on a box that appears on a computer screen has notice of all contents not only of that page but of other content that requires further action." *Id.* at 1034-35.

Whaleco's showing falls well short of that standard. It asserts that Plaintiff registered a Temu account on January 2, 2023 by clicking "Continue with Google" on a registration prompt. (Trinh Decl. ¶ 13). Whaleco treats that single click as dispositive, contending that Plaintiff "thereby" accepted or assented to the Terms. *Id.* But the click decides nothing on its own. Whether clicking "Continue with Google" objectively manifested assent depends on whether the screen gave reasonably conspicuous notice that using a Google authentication button would bind the user to contractual terms, including arbitration. *Sgouros*, 817 F.3d at 1034–35. Whaleco never makes that showing.

Whaleco's own evidence underscores the gap. It contends that the January 2023 registration prompt "generally appeared" as shown in Exhibit A of the Trinh declaration, while conceding that Exhibit A depicts only an Apple-device version and that Android devices did not display the "Continue with Apple" option, *id.* ¶ 7 n.1. Yet Whaleco does not identify Plaintiff's device, operating system, app version, screen variant, or language setting, each of which could have affected the screen Plaintiff allegedly saw. Nor does Whaleco attach the account-creation record or any native record showing the actual prompt displayed to Plaintiff on January 2, 2023. A generalized exemplar of how a screen "generally appeared" to some users is not competent proof that this Plaintiff saw a screen sufficient to form an arbitration agreement.

Whaleco's evidence as to the Terms in place suffers from the same problem. Plaintiff allegedly registered in January 2023, and the class period begins February 1, 2025. But Whaleco relies on Terms posted November 7, 2025 and Trinh's assertion that all earlier versions "likewise contained an arbitration provision with the terms described in the Motion." Trinh Decl. ¶¶ 18-19. Whaleco does not submit the Terms in effect at registration, the Terms in effect when Plaintiff allegedly made class-period purchases, the effective dates of any changes, or the amendment history for the arbitration, delegation, and class-waiver provisions. Without the operative Terms – which Whaleco does not say cannot be determined – Whaleco cannot prove the contract it seeks to enforce, and its Motion to Compel should be denied on that basis alone.

## B. The Temu Registration Prompt Did Not Provide Reasonably Conspicuous Notice.

Even accepting Whaleco's exemplar at face value, the registration prompt does not satisfy *Sgouros* and *Domer*. The governing question is not whether a company may ever use a sign-in-wrap design to form an online contract; it may. The question is whether this screen, in this context,

gave a reasonable user notice that continuing through a Google sign-in button constituted assent to arbitration:



It did not. "Continue with Google" communicates that the user will proceed to third-party login or authentication. It does not say "I agree," "Accept Terms," "Create Account," or anything else that unambiguously signals contractual assent. Under *Sgouros*, the Seventh Circuit found no assent where the website told the consumer that clicking a button authorized TransUnion to obtain personal information, but "says nothing about contractual terms." 817 F.3d at 1035. The Court explained that "[w]here a website specifically states that clicking means one thing, that click does not bind users to something else." *Id.* at 1035. The same principle applies here: clicking the

9

relatively bright and prominent "Continue with Google" button tells the user she is proceeding through Google authentication, not that she is surrendering her right to proceed in court. Inconspicuous, light-gray-on-white fine print at the bottom of the screen, which appears after the "Continue" buttons, further demonstrates a lack of reasonably conspicuous notice.

*Domer* is a poor fit for Whaleco's registration theory because the features that made the notice enforceable in that case are absent here. The notice in *Domer* began with bold and conspicuous "**Please note**" language that expressly told the consumer: "By submitting your order you accept our Terms of Order." 116 F.4th at 696-97. The hyperlinks to the terms appeared directly below the notice in contrasting green text, and the disclosure was placed near information a reasonable shopper would naturally review before pressing "SUBMIT ORDER." *Id.* at 697. The Seventh Circuit therefore held that the notice was spatially and temporally coupled to the act that allegedly manifested assent: submitting the order. *Id.* at 697-99.

Here, Temu's registration prompt is different in every legally-relevant respect. Plaintiff allegedly clicked "Continue with Google" (Trinh Decl. ¶ 13), a button that signals account authentication through Google, not assent to arbitration. The alleged notice appeared well *below* several account-access options, not in the natural flow of reviewing and submitting a purchase. That is, a person choosing the "Continue with Google" option would not even have reason to review (or even easily see) the registration prompt before clicking "Continue with Google." And Whaleco offers only a screen that "generally appeared" like its exhibit, without providing the exact device, app version, screen variant, or Terms Plaintiff actually encountered. Trinh Decl. ¶¶ 6-7 & n.1. *Domer* thus does not give Whaleco a shortcut to establishing notice and assent. It underscores that a court must examine the whole interface and ask whether the user's action was clearly

connected to acceptance of terms. Here, unlike in *Domer*, Whaleco has not shown that Plaintiff's Google sign-in click objectively manifested assent to the Terms.

Temu-specific authority confirms that Whaleco's sign-in screen fails to provide adequate notice. In *Eakins v. Whaleco Inc.*, the court denied Whaleco's motion to compel arbitration based on a similar – if not identical – Temu registration screen, holding that the app failed to provide reasonably conspicuous notice. *Eakins v. Whaleco Inc.*, 721 F. Supp. 3d 1252, 1255-59 (W.D. Okla. 2024). The court emphasized that Temu's disclosure of the terms appears "in relatively small font at the bottom of the screen," is spatially separated from the prominent action buttons, and that its "grey font against a white backdrop" does not distinguish the hyperlink from surrounding text merely by the words "Terms of Use" being "a darker shade of grey [that is] neither remarkable nor presents with the traditional hallmarks of hyperlinked text. *Id.* at 1259. The same court later reached the same result upon examining the same registration screen in *Smith v. Whaleco Inc.*, finding that the registration screen at issue here did not reasonably notify the user that proceeding would bind her to the Terms. *Smith v. Whaleco Inc.*, 741 F. Supp. 3d 1104, 1109 (W.D. Okla. 2024) ("[t]he notice here appears in grey font against a white backdrop, and while 'Terms of Use' is a darker shade of grey, the contrast is neither remarkable nor presents with the traditional hallmarks of hyperlinked text.").

*Johnson v. Whaleco* is likewise directly on point with respect to the Temu language at issue in this case. There, Whaleco relied on the same Temu registration screen to assert that the plaintiff had agreed to arbitrate claims against Whaleco. *Johnson v. Whaleco*, No. 5:23-cv-403-GAP-PRL, slip op. at 8-10 (M.D. Fla. Oct. 13, 2023). The court denied arbitration, finding the notice insufficient because – like the notice at issue here – it used light gray text against a white

11

background, lacked conspicuous visual cues, and appeared below more prominent login buttons. *Johnson*, No. 5:23-cv-403-GAP-PRL, slip op. at 8-10.

Case law within the Northern District of Illinois also forecloses enforcement of Temu's arbitration provision. In *Campos v. Tubi, Inc.*, Judge Tharp denied a motion to compel arbitration where the alleged registration notice appeared in small, poorly contrasted text and was not sufficiently coupled with the user's registration action. *Campos v. Tubi, Inc.*, 716 F. Supp. 3d 623, 633 (N.D. Ill. 2024). Judge Tharp explained that the relevant question was whether the screen would put a reasonable user on notice that registering an account manifested assent to the terms. *Id.* at 632. Similarly, in *Johnson v. Human Power of N Co.*, Judge Pallmeyer denied arbitration where the screen did not make clear that clicking "GET 15% OFF NOW" would bind the consumer to terms and conditions because the hyperlink to those terms was on a page before the actual registration page. *Johnson v. Human Power of N Co.*, 767 F. Supp. 3d 845, 854 (N.D. Ill. 2025). Here, as in J*ohnson*, Temu's registration flow similarly presents its terms and conditions inconspicuously and on a page *before* the page on which Plaintiff actually provided her registration credentials. *Campos* and *Johnson* follow *Sgouros*'s practical rule: a user's click is not assent where the screen conspicuously communicates one thing (e.g., continuing to a Google authentication process) while stealthily locking in the user's assent to binding arbitration language (included in a 31-page set of Terms) accessible only through inconspicuously hyperlinked terms of use set out in smaller, gray-scale font.

### C.      *Domer* and *Hamera* Do Not Save Whaleco's Motion.

Whaleco's reliance on *Domer* is misplaced. *Domer* involved a materially different checkout screen. In that case, the Menards page told the customer, "By submitting your order you accept our Terms of Order," and the disclosure was connected to the act of submitting an online

purchase. *Domer*, 116 F.4th at 691, 698. The Seventh Circuit emphasized that the notice, which began with the bolded words "**Please note,**" was in the purchase flow, spatially and temporally connected to the order submission, and sufficiently conspicuous in the overall context of the page. *Id.* at 698. That is not this case here. Whaleco's principal formation theory rests on an account-registration screen and a "Continue with Google" button, not an order-submission button. Unlike in *Domer*, the operative click does not itself communicate purchase acceptance or agreement to sale terms.

*Hamera* is similarly distinguishable. There, the court compelled arbitration based on a Best Buy checkout screen where the disclosure appeared directly above the "Place Your Order" button and expressly told the customer that placing the order constituted agreement to Best Buy's Terms and Conditions. *Hamera v. Best Buy Co.*, 790 F. Supp. 3d 664 (N.D. Ill. 2025). The evidentiary record was also materially stronger: Best Buy submitted testimony that the screenshot was recreated from its system of record and reflected the checkout page as it appeared when the plaintiff made his purchase. *Id.* at 668. Whaleco has not made a comparable showing here. It offers a registration prompt that would have "generally appeared" as shown in a screenshot attached to the declaration, a checkout exemplar "as it would have appeared" on February 1, 2025, and conclusory statements that Plaintiff accepted the Terms. (Trinh Decl. ¶¶ 6, 15-17).

Whaleco's favorable Temu cases from outside this District do not compel a different result, and in fact further illustrate that the "exemplar" notice attached to Whaleco's Motion fails to prove the sufficiency of whatever notice Plaintiff actually saw. The court in *Hu v. Whaleco, Inc.*, 779 F. Supp. 3d 265 (E.D.N.Y. 2024), describes the notice's text as "bolded and in a dark gray font," while the court in *Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112 (S.D. Cal. 2024), notes that "[t]he words 'Terms of Use and 'Privacy Policy' appear in *bright blue, underlined font*…" (emphasis

13

added). The court in *Silva v. Whaleco, Inc.*, No. 24-cv-02890-SK, 2024 WL 4487421, at 4 (N.D. Cal. Oct. 10, 2024) likewise describes the link to the 'Terms of Use and Privacy Policy'" as being "*capitalized and underlined in blue*" (emphasis added). And in *In re Whaleco Inc. Malware Litig.*, No. 2:25-cv-04651-MRA, 2025 WL 3691444 (C.D. Cal. Aug. 29, 2025) the Court explicitly notes that "[t]he phrase "Terms of Use" is also *underlined and written in blue font*, which indicates to the user that this is a hyperlink…" (emphasis added). Regardless, those decisions must be weighed against *Eakins*, *Smith*, and *Johnson*, all of which rejected Whaleco's efforts to compel arbitration based on the same or substantially similar Temu registration design. At minimum, those conflicting decisions demonstrate that Whaleco cannot prevail by invoking generic "sign-in-wrap" principles. It must prove formation on this record, under Seventh Circuit law, with sufficient evidence of what Plaintiff actually saw and accepted. It has failed to do so here.

**D. Later Logins and Checkout Screens Do Not Cure Whaleco's Failure of Proof.**

Whaleco's later-login theory likewise adds nothing. Whaleco asserts that Plaintiff logged out and back into her account 20 times and was shown the registration prompt each time. Trinh Decl. ¶ 14. But Whaleco attaches no login records, dates, device data, screen versions, or native records showing what Plaintiff saw during those alleged logins. More fundamentally, repetition of an inadequate notice does not create assent. *See Eakins*, 721 F. Supp. 3d at 1260 ("[i]f Defendant's notice was inconspicuous when Plaintiff created her account, the Court is unsure how such notice, if unaltered, became any clearer over time.").

The checkout theory is no stronger. An exemplar of a single registration screen as it "generally appeared" does not suffice to prove that an arbitration agreement exists when such an inquiry is necessarily fact intensive. *See Sgouros*, 817 F.3d at 1034–35. Whaleco asserts that during the class period users were presented with a checkout screen stating, "By submitting order,

14

you agree to [Temu's] Terms of Use and Privacy Policy," and attaches an exemplar "as it would have appeared as of February 1, 2025." Trinh Decl. ¶ 15. But Whaleco does not identify *Plaintiff's* purchase dates, whether each purchase occurred through the app or website, what device or app version Plaintiff used, what checkout flow applied, what screen version appeared, or what Terms were linked at the time of each transaction. The Complaint's allegation that Plaintiff purchased products from Temu does not fill those gaps. A purchase allegation is not an admission that Plaintiff saw a particular checkout disclosure, clicked through a particular checkout flow, or accepted a particular arbitration agreement. Whaleco thus has not met its burden of proof that the screen and Terms formed a valid agreement to arbitrate. And even if it has met its burden, for the reasons stated herein, such notice is just as inadequate upon its twentieth presentation to Plaintiff as it was upon its first.

**E. Delegation, Scope, and Class Waiver Cannot Be Reached Without Formation.**

Whaleco's delegation, scope, and class-waiver arguments all depend on the same missing predicate: a formed agreement. A delegation clause cannot send the question of formation to the arbitrator unless the parties first formed an agreement containing that clause. *See Janiga v. Questar Cap. Corp.*, 615 F.3d 735, 738 (7th Cir. 2010). The Court need not decide whether Plaintiff's claims fall within the scope of the arbitration clause, or whether the class waiver is enforceable, unless Whaleco first proves that Plaintiff agreed to the Terms containing those provisions.

Nor can Whaleco rely on the FAA's policy favoring arbitration to avoid its formation burden. The FAA favors arbitration, but it does not override the principle that a court may submit to arbitration only those disputes that the parties have agreed to submit. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302 (2010). Whaleco has simply not proven that Plaintiff agreed to arbitrate, and Whaleco's Motion should be denied.

15

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration should be denied in its entirety.

DATED: June 22, 2026                    Respectfully submitted,

                                        LOLA RUSSELL, individually and on behalf of similarly situated individuals

                                        By: /s/ *Joseph Dunklin*
                                        One of Plaintiff's Attorneys

                                        Myles McGuire
                                        Evan M. Meyers
                                        Joseph Dunklin
                                        MCGUIRE LAW, P.C.
                                        55 W. Wacker Drive, 9th Floor
                                        Chicago, IL 60601
                                        Tel: (312) 893-7002
                                        mmcguire@mcgpc.com
                                        emeyers@mcgpc.com
                                        jdunklin@mcgpc.com

                                        *Attorneys for Plaintiff and the Putative Class*

16

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2026, I electronically filed the foregoing *Plaintiff's Memorandum of Law In Opposition To Defendant's Motion To Compel Arbitration* using the CM/ECF system.  A copy of said document will be electronically transmitted to all counsel of record.


/s/ *Joseph Dunklin*

1